**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JOHN J. HAZEL,**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| **v.**  ) | **Civil Action No. 5-731 (RMC)** |
| ) | |
| **JO ANNE B. BARNHART,**  ) | |
| **Commissioner, Social Security**  ) | |
| **Administration,**  ) | |
| ) | |
| ) | |
| **Defendant.**  ) | |
| ) | |

**MEMORANDUM OPINION**

John J. Hazel appeals the March 29, 2004, decision of an Administrative Law Judge

("ALJ") denying his application for disability benefits and supplemental security income payments.

The ALJ found that Mr. Hazel was capable of performing a limited range of work that exists in

significant numbers in the economy and that Mr. Hazel was not disabled under the terms of the

Social Security Act.  Because the ALJ's decision is supported by substantial evidence, this Court

affirms.

**I.  BACKGROUND FACTS**

At the time of the ALJ's decision, Mr. Hazel was a 49-year-old with one year of

college education.  Tr.[1] at 20.  He has worked in the past as a data base administrator and computer

programmer.  *Id*.  On January 17, 2002, Mr. Hazel applied for disability insurance benefits and

---

[1] "Tr." indicates a reference to the transcript of the administrative record that was filed
with this Court.

supplemental security income ("SSI") payments, alleging that he had been disabled since October

1, 2001, due to bipolar disorder and alcoholism. Tr. at 79-81, 103, 443-45. Mr. Hazel's application

for benefits and SSI payments was denied initially and on reconsideration, and he requested an

administrative hearing. Tr. at 19. The hearing was held on January 23, 2004, before ALJ Larry

Banks. Mr. Hazel was represented by counsel at the hearing.

To qualify for disability insurance benefits under the Social Security Act, 42 U.S.C.

§§ 416(i) & 423, an individual must apply for benefits, meet the insured status requirements, be

under age 65, and present a "disability." The term "disability" means the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

. . . which has lasted or can be expected to last for a continuous period of not less than 12 months."

*Id*. § 423(d)(1)(A).   In order to fall within the definition of disability, an individual's physical or

mental impairment must be:

> of such severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists for him, or whether he would
> be hired if he applied for work. For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the national economy"
> means work which exists in significant numbers either in the region where
> such individual lives or in several regions of the country.

*Id*. § 423(d)(2)(A). To qualify for SSI payments based on disability, an individual must meet

identical requirements concerning disability, *id*. §§ 1381a & 1382c(a)(3)(A), and must have income

and financial resources below statutorily specified amounts. *Id*. § 1382.

A five-step test must be applied to determine whether a claimant is disabled under

the Act. 20 C.F.R. §§ 404.1520 & 416.920. First, if the claimant is performing substantial gainful

work, he is not disabled.  Second, if the claimant is not performing substantial gainful work, his

impairment must be "severe" before he can be deemed "disabled."  Third, if the claimant is not

performing substantial gainful work and he has a "severe" impairment that lasted, or is expected to

last, for at least twelve months and his impairment meets or medically equals a listed impairment

under Appendix I, subpart P, Regulation No. 4 (the "Listings"), the claimant is presumed to be

disabled without further inquiry.  If the impairment does not meet the Listings, the ALJ then

considers the claimant's individual evidence, moving on to steps four and five.  Fourth, if the

claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

Finally, even if the claimant's impairment prevents him from performing his past relevant work, he

is not disabled if other work exists in significant numbers in the national economy that

accommodates his residual functional capacity and vocational factors.  *Id*.

The ALJ issued his decision on March 29, 2004.  Tr. at 19-30.  The ALJ reviewed

the relevant evidence and found that Mr. Hazel had degenerative joint disease of the knees,

hypertension, and affective disorder considered "severe" under 20 C.F.R. §§ 404.1520(c) &

416.920(b), but that these impairments did not meet or exceed the Listings.  Tr. at 29.  Further, Mr.

Hazel was unable to perform his past relevant work.  *Id*.  However, consistent with the testimony of

a vocational expert, the ALJ found that Mr. Hazel had the residual functional capacity to perform

a significant range of light work  *Id*. at 30.  The ALJ found that Mr. Hazel could perform a range of

work at the light exertional level that did not involve more than occasional postural maneuvers, more

than minimal writing, exposure to hazards, environmental irritants, or temperature extremes, and that

was simple, routine, and unskilled.  *Id*. at 26, 28-29.  The vocational expert testified that someone

of claimant's age, educational background, and employment history whose range of light work was

limited could perform a significant number of jobs in the economy.  Tr. at 505-07.  The ALJ found:

> Although the claimant's nonexertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as inspector (visual) (1,470 jobs regionally and 87,000 jobs within the national economy); collator (newspapers, etc.) (1,700 regionally and 92,000 nationally); and ticket marker (1,850 regionally and 85,000 nationally).

*Id.* at 30.  Accordingly, the ALJ held that, through the date of the decision, Mr. Hazel was not

"disabled" as defined in the Social Security Act and was not entitled to disability insurance benefits

or SSI payments.

Mr. Hazel submitted a request for review to the Appeals Council of the Social

Security Administration.  In his request, he submitted: 1) a functional capacity questionnaire dated

July 6, 2004, from Dr. Mahmoud H. Mustafa and 2) a mental impairment questionnaire dated July

1, 2004, from Dr. Shaban Firdous.  Supplement to Administrative Record [Dkt. #8].  Dr. Mustafa

stated in the July 6, 2004 questionnaire that Mr. Hazel is unable to work and is "disabled from any

type of job." *Id.*, Mustafa Questionnaire at 7.  Dr. Firdous stated in the July 1, 2004 questionnaire

that Mr. Hazel "continually experiences symptoms of irritability, depression and panic attacks." *Id.*,

Firdous Questionnaire at 7.   The Appeals Council examined these questionnaires and determined

that they were not relevant to the ALJ's decision, as the ALJ decided Mr. Hazel's case through

March 29, 2004 and the questionnaires provided information regarding a later time.  Tr. at 8.

Finding no reason to review the ALJ's decision, the Appeals Council denied Mr. Hazel's request for

review.  *Id.* at 7.  Upon the Appeal Council's denial of Mr. Hazel's request for review, the ALJ's

decision became the final decision of the Commissioner.  20 C.F.R. § 422.210(a); *see e.g.*, *Wilkins*

*v. Secretary, Dept. of Health and Human Services*, 953 F.2d 93, 96 (4th Cir. 1991) (noting that

ALJ's decision became final decision of the Secretary when Appeals Council denied review).

Subsequently, Mr. Hazel appealed the ALJ's decision to this Court.  Mr. Hazel

contends that: 1) the Appeals Council failed to consider adequately the new evidence submitted; 2)

the ALJ erred by failing to credit fully Mr. Hazel's subjective complaints of disabling pain; 3) the

ALJ erred by failing to conduct a "function by function" assessment of Mr. Hazel's abilities; and 4)

the ALJ erred by declining to give controlling weight to the report of Mr. Hazel's treating physician,

Dr. Robbyn Steiner.

## II.  STANDARD OF REVIEW

In reviewing a case under the Social Security Act (the "Act"), the district court must

defer to the decision of the ALJ if it is supported by substantial evidence and it is in accordance with

applicable law.  42 U.S.C. § 405(g); *see also Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994).

"Substantial evidence" is evidence that a reasonable mind might accept as adequate to support a

conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  This test "requires more than a

scintilla, but can be satisfied by something less than a preponderance of the evidence."  *Fla. Mun.*

*Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003).

## III.  ANALYSIS

A.  New Evidence

Mr. Hazel argues that the denial of benefits should be reversed because the Appeals

Council failed to consider the July 2004 functional capacity questionnaire from Dr. Mustafa and the

July 2004 mental impairment questionnaire from Dr. Firdous.  He contends that this was new and

material evidence that should have been considered by the Appeals Council under 20 C.F.R. §

404.970(b).  The regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider
> the additional evidence only where it relates to the period on or before the
> date of the administrative law judge hearing decision.  The Appeals Council
> shall evaluate the entire record including the new and material evidence
> submitted if it relates to the period on or before the date of the administrative
> law judge hearing decision.  It will then review the case if it finds that the
> administrative law judge's action, findings, or conclusion is contrary to the
> weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

This Court has examined the doctors' questionnaires submitted by Mr. Hazel.  Like

the Appeals Council, this Court finds that the questionnaires represented an evaluation of Mr.

Hazel's condition as of July 2004.  Although both physicians indicated in the questionnaires that they

treated Mr. Hazel prior to March 29, 2004, neither questionnaire purported to describe Mr. Hazel's

condition prior to March 29, 2004, the date of the ALJ's decision.  Because this evidence did not

relate to the period on or before the date of the ALJ's decision, 20 C.F.R. § 404.970(b), it was not

new evidence that should have been considered by the Appeals Council.[2]

---

[2] Even if the questionnaires had related to the relevant time period, they were not
"material" evidence.  Evidence is material if there is a reasonable possibility that the new
evidence would have changed the outcome. *Wilkins v. Secretary, Dept. of Health and Human
Services*, 953 F.2d 93, 96 (4th Cir. 1991).  The questionnaires would not have changed the
outcome in this case.  First, they are entitled to little weight because they are form reports.  Form
reports, where a physician is required only to check a box or fill in a blank, are "weak evidence at
best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  Second, Dr. Mustafa's report
merely gave an opinion on the ultimate issue, by stating that Mr. Hazel was "disabled from any
job."  Supplement to Administrative Record, Mustafa Questionnaire at 7.  The final
responsibility for deciding this question is reserved to the Commissioner.  20 C.F.R. §§
404.1527(e) & 416.927(e).  Finally, Dr. Firdous' July 2004 questionnaire was contradicted by his
March 2004 report, issued just prior to the ALJ's decision, which described Mr. Hazel as
oriented in all spheres, with normal affect, goal-directed thought processes, no cognitive deficits,
normal psychomotor activity, and fair memory.  Tr. at 475-76.

B.  Subjective Complaints of Pain

Mr. Hazel also argues that the pain and depression he experienced precluded him from performing any work.  Under the Social Security Act, "a subjective complaint of pain is not sufficient to establish liability; there must also be objective medical evidence of an underlying condition that would explain the pain."  *Simms v. Sullivan*, 877 F.2d 1047, 1051 (D.C. Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)).  In all by the most exceptional cases, courts defer to the ALJ's findings regarding credibility  relating to subjective allegations.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  Here, the ALJ considered the entire record and found that Mr. Hazel was not disabled due to pain and that he could perform a significant range of light work.  The record includes the following evidence regarding Mr. Hazel's condition prior to March 29, 2004:

1) Mr. Hazel was not in acute distress, Tr. at 147, 152, 155, 194, 354, 401, 433;

2) Mr. Hazel was alert and fully oriented in all spheres, *id*. at 152, 174, 196, 354, 383, 400-01, 428, 433, 475;

3) Mr. Hazel had normal motor strength, a normal gait, no sensory, reflex, or psychomotor abnormalities, *id*. at 196, 382, 402, 408, 428, 475, and no medication side effects *id*. at 306, 428, 475;

4) Dr. Isabel Pico, a state agency physician, evaluated Mr. Hazel and determined that Mr. Hazel could perform at an exertional level that included a significant range of light work, *id*. at 409-16;

5) From November of 2001 to January of 2002, Mr. Hazel worked in real estate, *id*.

at 230, 269, 272-78, 285-86, 290-91, 300-03, 311, 348, 354, 424-25,[3] and his doctors encouraged

him to find work, *id*. at 293; and

6) Mr. Hazel performed daily activities including self-care, cooking, shopping,

cleaning, listening to music, reading, television, sightseeing, and visits with family and friends, *id*.

at 112-14, 126-27, 354, 382.

In sum, the record contains substantial evidence that Mr. Hazel was able to perform

a range of light work, despite his reports of pain.  Because the ALJ's findings were based on

substantial evidence, the findings must be affirmed.

C.  Functional Assessment of Mr. Hazel's abilities

The ALJ determined that Mr. Hazel was capable of performing the exertional

demands of light work.  Mr. Hazel argues that in making this finding, the ALJ erred by failing to

conduct a "function by function" assessment of Mr. Hazel's abilities under Social Security Ruling

96-8p, 61 Fed. Reg. 34,474 (1996), and that the ALJ's decision should have included a narrative

discussion of how the evidence supported each conclusion regarding Mr. Hazel's abilities.

Social Security Ruling ("SSR") 96-8p provides that when an individual applies for

benefits, the Social Security Administration must identify an individual's limitations and assess his

work-related abilities, physical and mental, on a "function by function" basis.  The SSR requires an

ALJ to consider the physical and mental abilities of the disability applicant but does not require the

ALJ to specify his functional evaluations when there is no evidence of a relevant limitation.  "When

---

[3] In order to qualify for disability benefits, the claimant must not be performing substantial gainful work.  20 C.F.R. §§ 404.1520 & 416.920 (if claimant is performing substantial gainful work, he is not disabled).  Accordingly, during the time he was working, Mr. Hazel was not disabled under the Act.

there is no allegation of a physical or mental limitation . . . and no information in the case record that

there is such a limitation or restriction, the adjudicator must consider the individual to have no

limitation or restriction with respect to that functional capacity." SSR 96-8p; *see, e.g., Johansen v.*

*Apfel*, No. 98-35199, 1999 WL 170793 (9th Cir. Mar. 23, 1999) (SSR 96-9p does not require

enumeration of each exertional capacity where there is no credible evidence of a limitation in these

functions).

      The ALJ in this case found that Mr. Hazel could perform a range of work at the light

exertional level that did not involve more than occasional postural maneuvers, more than minimal

writing, exposure to hazards, environmental irritants, or temperature extremes, and that was simple,

routine, and unskilled.  Tr. at 26, 28-29.  No evidence was introduced that indicated that Mr. Hazel

had a long-term functional restriction that was not included in the ALJ's assessment, and  Mr. Hazel

himself testified that his impairments were non-physical in nature.  Tr. at 496.  On appeal, Mr. Hazel

still does not point to any functional limitation that was omitted from the ALJ's assessment.  There

is no credible evidence regarding any long-term functional restriction that was not taken into

consideration by the ALJ, and this ground for appeal must be rejected.

    D.  Treating Physician's Opinion

      Mr. Hazel also argues that the ALJ erred by declining to give controlling weight to

the May 2, 2003 report of Mr. Hazel's treating physician, Dr. Robbyn Steiner.  Dr. Steiner stated in

the report that Mr. Hazel was unable to perform in a competitive work setting due to his bipolar

disorder.  Tr. at 398-400.

      The medical opinion of a treating physician is entitled to controlling weight if it is

"not inconsistent with other substantial record evidence and [it is] well-supported by medically

acceptable clinical and laboratory diagnostic techniques." *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004).   Dr. Steiner's statement that Mr. Hazel could not perform in a competitive work setting is belied by the doctor's own findings regarding Mr. Hazel's mental status.  Despite finding that Mr. Hazel had a depressed mood, Dr. Steiner reported that he lived independently, he was oriented in all spheres, his speech was coherent and spontaneous, his concentration and memory were fair, his insight was good, and his judgment and impulse control were intact.

Further, substantial medical evidence in the record supports the ALJ's findings and contradicts Dr. Steiner's May 2, 2003, report.  Dr. Steiner reported on June 16, 2003, just six weeks after the May 2 report, that Mr. Hazel's condition had improved.  Tr. at 428-29.  Dr. Steiner's June 16 report indicated that Mr. Hazel took his prescribed medication and that he had a euthymic[4] mood, appropriate appearance, affect, and thought processes, and his insight, judgment, and memory were good.  *Id*. at 428.  Another treating physician, Dr. Gerard Fegan, reported that Mr. Hazel had no work restrictions related to his emotional impairment, *id*. at 176-77, and that he was working in the real estate field, *id*. at 230, 274, 283, 298, 322, 354.  Mr. Hazel's treating psychiatrist, Dr. Firdous, described Mr. Hazel in his March 2004 report as oriented in all spheres, with normal affect, goal-directed thought processes, no cognitive deficits, normal psychomotor activity, and fair memory.  *Id*. at 475-76.  Dr. Fegan opined that Mr. Hazel's medications were "controlling his mania and depression."  *Id*. at 175.  When Mr. Hazel was compliant with his prescribed treatment, he had only mild to moderate symptoms.  *Id*. at 27, 428, 475-76.  "If a symptom can be reasonably controlled by medication or treatment, it is not disabling."  *Gross v. Hecker*, 785 F.2d 1163, 1166 (4th Cir. 1986).

---

[4] "Euthymic" means characterized by euthymia.  Biology-Online.org/dictionary/euthymic. "Euthymia" means "1. joyfulness; mental peace and tranquility.  2. moderation of mood, not manic or depressed."  Biology-Online.org/dictionary/euthymia.

Thus, substantial record evidence supports the ALJ's decision, and he did not err by failing to give controlling weight to the May 2003 report of Dr. Steiner.

## IV.  CONCLUSION

Having reviewed the pleadings and the record, the Court finds that the decision of the ALJ is supported by substantial evidence and is in accordance with applicable law.  Accordingly, Mr. Hazel's motion for judgment of reversal and judgment on the pleadings [Dkt. #10] is denied, the Commissioner's motion for judgment of affirmance [Dkt. #14] is granted, and this case is dismissed. A memorializing order accompanies this Memorandum Opinion.

Date:   May 12, 2006                               _____/s/_____
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge